Deanna Jean BOBO *v.* STATE of Arkansas

CA CR 07-401 285 S.W.3d 270

Court of Appeals of Arkansas

Opinion delivered May 28, 2008

[Rehearing denied June 25, 2008.*]

---

* HART, J., would grant rehearing.

*Sam Sexton*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Deanna Jean Bobo was convicted of two counts of first-degree sexual assault. She was sentenced to two six-year terms of imprisonment, to run consecutively. She argues that the trial court abused its discretion in (1) allowing two witnesses to testify that, prior to the alleged sexual

assault, the victim touched her on the breast; (2) admitting into evidence nineteen emails allegedly exchanged between her and the victim; and (3) permitting the jury to hear, during her recorded statement, her request to speak with an attorney, which she claims is a violation of her Fifth Amendment right to not testify against herself. We affirm.

Because Bobo does not challenge the sufficiency of the evidence on appeal, only the evidence relevant to the appeal is discussed in this opinion. On the morning of November 3, 2005, Twilla Frosco checked her email on the family computer. She saw that the email account of her fourteen-year-old son (DF) was open on the screen. She read some of the messages and found that there were multiple email exchanges between DF and Bobo, one of DF's former school teachers. The messages were sexually explicit. Twilla forwarded the emails to her personal email account and called her husband, Richard Frosco, who asked Twilla to forward the emails to him at work.

Upon receipt of the emails, Richard called the prosecutor's office in Sebastian County and was referred to the Greenwood Police Department. He ultimately spoke with Detective Heather McCaslin of the Greenwood Police Department, who asked Richard to forward the emails to her. Greenwood Police Department Sergeant James Flynn testified that Detective McCaslin forwarded the emails to him on November 3, 2005. He thereafter issued subpoenas to the internet providers of the parties involved, obtained consent to search DF's computer, and secured a warrant to search Bobo's computer.

At trial, DF testified that when he was in eighth grade, Bobo was his math co-teacher. In February 2005, Bobo picked DF up at church and drove him to a loading dock where DF testified they had sexual intercourse in Bobo's vehicle. Afterwards, Bobo drove DF back to church. DF testified that Bobo came to his house a few weeks later while his parents were not home, and they had sexual intercourse again.

The State offered the testimony of two classmates of DF. Madison Rambin testified that while in the classroom in the fall of 2004, she witnessed DF "scoop" Bobo's breast. Rambin testified that scooping occurs when one person uses his hand and touches another person on the chest. She stated, "Scooping is something that the kids at school do a lot. This is something that kids will go do to other kids in the hall and run off. It can be kind of a pestering thing. It is kind of comparable to how it used to be like pulling a

pigtail or something to irritate." Rambin further testified that the act did not seem to bother Bobo and that DF did not get in trouble for doing it. Cody Johnson, another classmate of DF's, testified[1] that he witnessed DF scoop Bobo in the hallway at school. Johnson testified that DF took his hand and "kind of flips [sic] the breast out."

Finally, the State and Bobo presented competing expert testimony on the issue of whether the emails Twilla forwarded from DF's email account were accurate, had been altered, and whether they were actually from Bobo.

The jury convicted Bobo of two counts of first-degree sexual assault pursuant to Arkansas Code Annotated section 5-14-124 (Repl. 2006).[2] The trial court imposed the sentence recommended by the jury — two consecutive six-year sentences of imprisonment in the Arkansas Department of Correction — and Bobo filed a timely notice of appeal.

Bobo's appeal consists of two evidentiary matters and a constitutional argument. Specifically, she argues that the trial court abused its discretion in (1) allowing Rambin and Johnson to testify that DF scooped her; (2) admitting into evidence nineteen emails allegedly exchanged between her and DF; and (3) permitting the jury to hear during her recorded statement her request to speak to an attorney, which she claims is a violation of her Fifth Amendment right to remain silent.

Bobo's first point on appeal is that the trial court abused its discretion in allowing Rambin and Johnson to testify that DF scooped her twice at school. At a pre-trial hearing, the State argued that this testimony was admissible under the pedophile exception to Rule 404(b) because it concerned antecedent conduct that corroborated DF's testimony and it showed that DF and Bobo were familiar and intimate with each other. Over Bobo's objection, the trial court admitted the testimony into evidence.

On appeal, Bobo argues that the scooping incidents should not have been admitted under the pedophile exception because

---

[1] Johnson was not available to testify at trial; however, portions of his testimony from a pre-trial evidentiary hearing were provided to the jury.

[2] Arkansas Code Annotated section 5-14-124(a)(3) provides:

> A person commits sexual assault in the first degree if the person engages in sexual intercourse or deviate sexual activity with another person who is less than eighteen (18) years of age and is not the actor's spouse and the actor is: ... An employee in the victim's school ....

(1) there is a lack of similarity between the scooping incidents and the sexual-abuse allegations made by DF; (2) the scooping was non-sexual in nature; (3) the prejudicial value of the evidence substantially outweighs its probative value; (4) the evidence is not relevant because the scooping occurred prior to the alleged abuse; and (5) the evidence is not relevant because DF committed the acts — not her.

While Bobo filed several motions in limine, she did not file a motion in limine making any of the above arguments related to this issue except for the relevancy argument — that evidence about the scooping incidents was inadmissible because DF committed the act, not Bobo. In order to preserve an argument for appeal, it must be raised at trial. *Randle v. State*, 372 Ark. 246, 273 S.W.3d 482 (2008). Therefore, Bobo's only preserved argument is that the scooping incidents are irrelevant and inadmissible because DF committed the scooping act.

We hold that the evidence that DF scooped Bobo on two occasions is admissible because it is independently relevant and falls within the pedophile exception. Rule 404(b) provides:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Hyatt v. State*, 63 Ark. App. 114, 975 S.W.2d 443 (1998). We have long recognized a "pedophile exception," which allows proof of "similar acts with the same child or other children in the same household when it is helpful in showing a proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship." *Id.* at 116, 975 S.W.2d at 444. Such evidence not only helps to prove the depraved sexual instinct of the accused, but is also admissible to show the familiarity of the parties and antecedent conduct toward one another and to corroborate the testimony of the victim. *Id.*; *see also Johnson v. State*, 288 Ark. 101, 702 S.W.2d 2 (1986) (holding that prior sexual-abuse testimony was admissible where it was not introduced for the purpose of proving a substantive crime, but rather to show the relation, familiarity, and intimacy of the parties, their disposition and

antecedent conduct towards each other, and as corroborative of the testimony of the prosecuting witness). A student-teacher relationship is an intimate relationship for purposes of the exception. *Garner v. State*, 81 Ark. App. 309, 101 S.W.3d 857 (2003).

 In the case at bar, the scooping evidence was antecedent conduct that demonstrated an intimacy between DF and Bobo. DF was comfortable enough in the relationship with Bobo to touch her on the breast on two occasions during school hours with other students nearby. This antecedent sexual conduct further corroborated DF's testimony that he and Bobo were later sexually involved. The scooping incidents also show Bobo's proclivity to engage in sexual acts with minors with whom she had an intimate relationship. As such, the evidence is independently relevant and is admissible under the pedophile exception.

Bobo's second point on appeal is that the trial court erred when it admitted into evidence nineteen emails allegedly exchanged between her and DF. Because the original emails from the computers of DF and Bobo no longer exist,[3] she argues that the State failed to properly authenticate the forwarded emails (as there was evidence of tampering and/or altering of them) and that the emails were admitted in violation of best-evidence rules found in Arkansas Rules of Evidence 1001–1004 (2007).

In evidentiary determinations, a trial court has wide discretion, and we do not reverse a ruling on the admission of evidence absent an abuse of that discretion. *Smith v. State*, 354 Ark. 226, 118 S.W.3d 542 (2003). We hold that the trial court did not abuse its discretion in admitting the emails because there was sufficient evidence that the emails had been authenticated.

Rule 901(a) of the Arkansas Rules of Evidence provides that: "The requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." According to the rule, one example of authentication is the "testimony of a witness with knowledge that a matter is what it is claimed to be." Ark. R. Evid. 901(b)(1). Authentication requirements are satisfied if the trial court, in its discretion, concludes that the evidence presented is genuine and, in reason-

---

[3] DF deleted the emails from his computer, and Bobo's computer crashed in June 2005.

able probability, has not been tampered with or altered in any significant manner. *Davis v. State*, 350 Ark. 22, 86 S.W.3d 872 (2002); *Guydon v. State*, 344 Ark. 251, 39 S.W.3d 767 (2001). To satisfy these requirements, every possibility of tampering need not be eliminated. *Guydon, supra.*

Under these standards, the emails were properly authenticated. DF testified that he either mailed to Bobo or received from Bobo each of the emails in question. Moreover, DF's mother testified that she read the original emails exchanged between DF and Bobo. Bobo admitted to sending emails to DF, and although she denied any of the sexual content of the emails, she admitted that she sent emails to DF with non-sexual content. For example, she admitted visiting with DF via email about her computer problems, his new school, and his girlfriend. She also admitted that she sent him an email telling him that she hoped he did not forget her. All of this non-sexual content was contained in the emails in question.

██ Further, the State presented evidence confirming that the emails in question were properly addressed to DF's email account and the email account of Bobo and her husband. Sergeant Adam Holland of the Fort Smith Police Department and Michael Parks of the Fayetteville Police Department conducted forensic examinations of DF and Bobo's computer and located the emails in question. The State offered an additional expert witness, Paul Brown, who not only examined the computers but also the server through which the emails traveled. Brown verified that fifteen of the emails sent by Bobo to DF matched a temporary, unique IP internet address for her computer. Despite arguments made by Bobo that the emails could have been tampered with or altered because some of the forwarded emails had no headers, the State's experts concluded that the emails were genuine and that the validity of the emails was not in question.

Likewise, we hold that the trial court did not abuse its discretion in finding that the email printouts used at trial were the best evidence of the original emails exchanged between DF and Bobo. Arkansas Rule of Evidence 1002 provides: "To prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided in these rules . . . ." Rule 1004 provides that "[t]he original is not required, and other evidence of the contents of a writing . . . is admissible if . . . [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad

faith." Ark. R. Evid. 1004(1). "If data are stored in a computer . . . any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.' " Ark. R. Evid. 1001(3).

■ The emails at issue were stored in the computers of DF and Bobo. Original emails could not be printed from Bobo's computer because it crashed in June 2005, and could not be printed from DF's computer because he deleted them. However, under Rule 1004, because the originals were lost or destroyed, it is permissible to admit other printouts of the emails, which were forwarded to other computers, as long as they were shown that they reflect the data accurately. As set forth above, there is sufficient evidence demonstrating that the emails offered into evidence are accurate. Furthermore, the bad-faith exception does not apply because there is no evidence that the State — the proponent of the emails — in bad faith lost or destroyed the emails.

Bobo's third and final argument for reversal is that evidence was improperly presented to the jury that she invoked her Fifth Amendment right to not testify against herself. During her video-taped statement, Bobo stated that she needed to speak to an attorney. She claims that statement effectively informed the jury that she invoked her Fifth Amendment right to not testify against herself, which is information the jury is prohibited from receiving. While Bobo acknowledges that a contemporaneous objection is required in order to raise an issue on appeal, and concedes that no objection was made at trial on this issue, she argues that the error is so serious that a contemporaneous objection is not required to preserve this issue for appeal.

■ Bobo cites *Griffin v. U.S.*, 380 U.S. 609 (1965), for the proposition that the jury cannot be informed of a defendant's right to remain silent. Even if *Griffin* applied to this case, our supreme court has held that a defendant must object at trial to evidence that the defendant invoked his right to remain silent in order to raise that issue on appeal. In *Ronning v. State*, 295 Ark. 228, 748 S.W.2d 633 (1988), the defendant argued on appeal that the prosecutor's closing argument commented on the defendant's failure to testify as evidence of guilt, in violation of *Griffin*. On appeal, our supreme court held that because the defendant failed to make a contempo-raneous objection at trial, the argument was not preserved for appeal. *Ronning*, 295 Ark. at 235, 748 S.W.2d at 637. The court stated: "In hundreds of cases we have repeated the fundamental rule that an argument for reversal will not be considered in the

absence of an appropriate objection in the trial court." *Id.* Bobo concedes that she did not object at trial on this issue; therefore, it is not preserved for review.[4]

Affirmed.

PITTMAN, C.J., and BIRD, J., agree.

---

[4] Bobo also cites *McCoy v. State*, 60 Ark. App. 306, 962 S.W.2d 822 (1998) and *Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996), for the proposition that when a fundamental right to trial is denied, reversal is warranted even if the basis for same is raised for the first time on appeal. The fundamental rights at issue in *McCoy* and *Collins* are not the rights at issue in the instant case. In *McCoy*, the issue was whether the trial court established that the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial, and it was held that he did not. *McCoy*, 60 Ark. App. at 309-10, 962 S.W.2d at 824. In *Collins*, the defendant argued on appeal, for the first time, that he was denied the fundamental right to a twelve-person trial, and the court reversed on that issue. *Collins*, 324 Ark. at 327-28, 920 S.W.2d at 849. In contrast, Bobo was not denied her fundamental right to trial. She had a twelve-person jury trial. Therefore, these cases are inapplicable.